### No. 27,261.

R. F. HODGINS et al., *Appellees*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SHAWNEE et al., *Appellants*.

#### SYLLABUS BY THE COURT.

1. TAXATION—*Assessment of Corporate Property—Government Bonds Held by Corporation*. In an assessment of the property of an ice company made under the provisions of R. S. 79-310, there is no authority in the state to levy a tax upon United States bonds owned by the corporation when the assessment was made, and when paid under protest the taxpayer is entitled to recover from the county the invalid tax exacted.

2. SAME—*Action to Recover Tax Paid Under Protest—Necessity of Proceeding to Correct Assessment*. The taxpayer is entitled to maintain an action to recover the tax so imposed although he has not first applied to the taxing officers for a deduction of the illegal assessment placed on the taxpayer's property by the assessor.

3. SAME—*Distribution of Illegal Tax—Effect on Right to Recover*. The fact that the county officers had distributed the tax so collected among the municipalities of the county before the action was brought, does not preclude a recovery from the county of the invalid tax which it had levied and collected.

4. SAME—*Validity of Assessment—Necessity of Applying to Board of Equalization for Reduction*. An assessment of the property of a taxpayer for a certain year which was made by the assessor in good faith and in the exercise of his best judgment, and the taxpayer did not apply to the board of equalization to reduce the valuation, cannot be regarded as a void assessment.

Appeal from Shawnee district court, division No. 2; GEORGE H. WHITCOMB, judge. Opinion filed April 9, 1927. Affirmed.

*W. E. Atchison, Ralph H. Gaw* and *Ralph T. O'Neil*, all of Topeka, for the appellants.

*Bennett R. Wheeler, S. M. Brewster* and *J. L. Hunt*, all of Topeka, for the appellees.

---

Taxation, 37 Cyc. pp. 879 n. 49, 880 n. 57, 1026 n. 55, 1028 n. 62, 1175 n. 39, 1177 n. 52, 1184 n. 79, 1185 n. 90; 26 R. C. L. 454, 459; 11 L. R. A. n. s. 1104.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action to recover taxes alleged to have been illegally assessed and collected from plaintiffs upon corporate property, which they paid under protest. The plaintiffs were the directors and are the successors in interest of the corporation formerly called the Topeka Cold Storage, Ice and Fuel Company, but its name was changed to the H. & K. Investment Company, and it has since been dissolved. They sued the board of county commissioners of Shawnee county to recover the protested taxes for the years of 1920, 1921 and 1922, and named as defendants, the city of Topeka, the board of education of Topeka, and the treasurers of these municipalities. The trial court found that certain nontaxable liberty bonds were included in the assessment of the corporate stock of the company for the years named, and that the excess charge exacted upon the liberty bonds amounted to $5,496.43, for which judgment was given against the board of county commissioners. The board appeals from that judgment.

Error is also assigned by the plaintiffs upon the refusal of the court to set aside the assessment for 1921 on the ground that an arbitrary valuation was placed upon the property by the assessor without inspection of the books of the company, and without knowledge of its assets or liabilities, and therefore it is insisted that no valid assessment was made and that the valuation arbitrarily entered by the assessor was far in excess of the actual value of the corporate property.

In the appeal of the board of county commissioners, it is contended that the value of the liberty bonds should not have been deducted in arriving at the value of the taxable assets of the corporation. It is conceded that United States securities as such are not taxable, but it is the contention that the statute places the tax upon the stockholders and not upon the corporation, and that the corporation was not entitled to a deduction for the liberty bonds included in the valuation of the corporate property. The assessment was made under R. S. 79-310 and the plaintiffs' right to recover the taxes paid under protest turns upon the interpretation of that provision. It provides:

"That no person shall be required to include in the list of personal property any portion of the capital stock of any company or corporation which is required to be listed by such company or corporation; but all incorporated com-

panies, except such companies and corporations as are specially provided for by statute, shall be required to list by their designated agent in the township or city where the principal office of said company is kept, the full amount of stock paid in and remaining as capital stock, at its true value in money, and such stock shall be taxed as other personal property: *Provided,* That such amount of stock of such companies as may be invested in real or personal property, which, at the time of listing said capital stock, shall be particularly specified and given to the assessors for taxation, shall be deducted from the amount of said capital stock: *Provided,* That mortgages owned by any such company on property, real or personal, in any other state, shall not be deducted: *Provided further,* That real or personal property in any other state, or county in this state, shall be deducted if it be made to appear that the same has been duly listed for taxation in such other state or county in this state."

Manifestly the statute treats the corporation as a legal entity and as the owner of the corporate property. It is required to list the property which it owns for taxation at its true value in money. The plan devised by the legislature for the taxation of corporate property is to assess the capital stock of the corporation, and its value is determined by the value of its assets less its liabilities and also less certain property which is required to be assessed by a different method under other statutory provisions. In *Bank v. Geary County,* 102 Kan. 334, 170 Pac. 33, the distinctions between property owned by a corporation and the ownership of shares of stock by individuals is fully treated, and although the case involved the taxation of bank stock under a different section of the law, it became necessary to discuss the relation of stockholders to corporations and as to the ownership and control of corporate property under the section involved here, and what is there said is applicable to the point in question and also as to the exemption of United States bonds from taxation. In answer to a contention of a lack of uniformity in the taxation of corporate property it was said:

"If, when the corporation lists its capital stock, it specifies particularly the real estate and the chattels which it owns, and returns such property for taxation in the usual way, the value of such property may be deducted from the value of the capital stock, except that real-estate mortgages and chattel mortgages may not be deducted. If it be shown that real estate and personal property situated in another state have been duly listed for taxation there, such property may be deducted. The remainder is the value of the capital stock, for the purposes of taxation. *Stockholders are not taxed on their shares, and capital stock, valued in the manner described, is taxed as personal property to its owner, the corporation.*"

In *Life Insurance Co. v. Anderson,* 117 Kan. 451, 232 Pac. 592,

the court recognized that the tax was levied upon the property of the corporation and not on the shares held by individual stockholders, and it was further decided that the state was powerless to levy a tax upon United States bonds. It was said to be the duty of the taxing officer to deduct from the total valuation of the property of the corporation the amount of the United States securities included in that valuation. Among other authorities relating to this phase of the case are *Gas Company v. Spaeth*, 83 Kan. 191, 109 Pac. 785; *Building Co. v. Saline County*, 98 Kan. 732, 160 Pac. 971; *Ranchmen's Trust Co. v. Duncan*, 114 Kan. 308, 219 Pac. 523. Defendant refers to *Davis-Wellcome Mortgage Co. v. Haynes*, 119 Kan. 1, 237 Pac. 918, as an authority that the tax is really one against stockholders rather than upon the corporate property, and that the tax is paid for them. That case had to do with the new act relating to the payment of registration fees upon mortgages which when paid were to relieve the mortgages and notes secured by them from other tax. Another question considered was the effect of the intangible tax on the moneys and credits held by a corporation. While it was said that the corporation pays taxes in behalf of stockholders, it was recognized throughout the opinion that the tax was levied upon the property of the corporation represented by its capital stock, and that the corporation pays the tax on all the outstanding shares of stock. Nothing inconsistent with the previous rulings that have been made, to the effect that the corporation was to list for assessment the property owned by it, and that it was required to pay the tax so imposed, was decided in that case. The statute in plain terms provides that the corporation shall make return of its property to the assessor, and that a stockholder shall not be required to list shares of corporate stock which he owns and which the corporation itself is required to list.

It is conceded that United States bonds are not taxable by the state, and if they were in fact made a part of the valuation upon which the protested tax was levied, the assessor should have deducted them from the valuation returned. (*Salthouse v. McPherson County*, 115 Kan. 668, 224 Pac. 70; *Life Insurance Co. v. Anderson*, supra.) · The trial court expressly found upon the evidence which was not brought up that the value of the liberty bonds was included in the assessment for the years 1920, 1921 and 1922, and the judgment of the court was based on these findings. It must be regarded

that the liability of the county for the recovery of the tax coercively and unlawfully collected on United States bonds was established.

There is a contention that the plaintiffs failed to take certain statutory methods of correcting the assessment, and is therefore barred from claiming a recovery in this action. It is said that they failed to apply to the county board of equalization, to the county clerk, and also to the state tax commission, within the time fixed by statute to correct errors as provided in R. S. 79-1601 to 79-1703. These remedies it has been determined are applicable for the correction of irregularities, but the taxpayer is not confined to them where the errors are jurisdictional in character and such as to render the assessments void. If the tax is levied on property that is exempt, the taxpayer has a right to invoke the ordinary judicial remedies. (*Salthouse v. McPherson County,* supra, and cases therein cited. Also, see *Railway Co. v. Greenwood County,* 104 Kan. 818, 180 Pac. 785; *Railway Co. v. Montgomery County,* 121 Kan. 428, 247 Pac. 442.) Besides it appears that the officers of the county, including the state tax commission, had declared and were holding that United States bonds were taxable, and they informed the plaintiffs when they protested the invalid tax that no deduction could be made because of the inclusion of the liberty bonds. The officers were given ample warning of the illegality of the tax and of the demand for·deduction from the valuation made. A resort to these officers for a correction would obviously have been futile.

The fact that there was delay in bringing the action until the illegal tax had been distributed among the municipalities of the county does not preclude a recovery from the county, since the action was brought within the statutory period of limitations. It was the county officers who made the assessment and who illegally exacted the tax. The illegality was brought to the attention of the county by the protest of the plaintiffs before any distribution was made, and the tax collected was then in the possession of the county. The county was in the attitude of a person who without authority of law had wrongfully obtained the money of a taxpayer, and it is no defense to it to say that the money had been turned over to another than the one to whom it belonged. The owner of the fund is entitled to recover all of it from the party that extorted it. (*Ward v. Love County,* 253 U. S. 17; *Lauman v. County of Des Moines,* 29 Ia. 310; *Montgomery v. Cowlitz Co.,* 14 Wash. 230; *First National Bank v. Watkins,* 21 Mich. 483.)

The cross complaint that the assessment of plaintiffs' entire corporate property for the year 1921 was without validity, does not require extended discussion. It is said that the valuation of the property for that year was grossly excessive, and that the excess was shown by comparison with the valuations of substantially the same property in the year preceding and following. It is urged that the assessor did not inspect the property nor examine the books of the company and hence could not know the indebtedness of the company nor the valuation to place upon the property. It is therefore said that the valuation was arbitrary and illegal and that the assessment is absolutely void. It appears that the assessor did apply to the plaintiffs to list their property, and that the president of the company signed and swore to a statement in blank requesting the assessor to fill it up from figures which he would find in a report made by the corporation to the secretary of state, and that this was not done by the assessor. That officer says that he obtained the figures from an officer of the company in the presence of its president. The court found that it was difficult to learn from the evidence where the assessor got the figures which he placed in the assessment made or just what assets were taken into account in making the assessment. A finding was made by the court, however, that:

"There is no evidence to warrant a finding that the fixing of the value at the last named figures was not done in good faith or that the assessor did not use his best judgment in making the valuation."

Under the findings it cannot be held that the assessment made is wholly void. An incomplete statement was made by the company, a valuation was placed upon the property by the assessor, and although it may have been excessive to some extent, the valuation fixed by the assessor must be regarded as an exercise of his best judgment, as it was done in good faith. The real value of property is a matter of judgment, and for taxing purposes the duty of exercising this judgment is placed upon the assessor, and a court may not usurp his functions nor substitute its opinion of value for his. It may be added that the plaintiffs did not bring this alleged error to the attention of the board of equalization as the statute permits. Outside of the illegal tax on the liberty bonds, the assessment for that year must be regarded as valid.

The judgment is affirmed.