No. 32,139

THE DAVIS-WELLCOME MORTGAGE COMPANY, *Plaintiff*, v. THE TAX COMMISSION OF THE STATE OF KANSAS et al., *Defendants*.

(38 P. 2d 1100)

Opinion filed December 27, 1934.

*Bennett R. Wheeler, S. M. Brewster* and *John L. Hunt,* all of Topeka, for the plaintiff.

*W. B. Crowther* and *C. W. Brenneisen, Jr.,* both of Topeka, for the defendants.

The opinion of the court was delivered by

BURCH, J.: The action is one of mandamus to compel removal from the tax statement of the Davis-Wellcome Mortgage Company, of an entry made by the assessor increasing plaintiff's assessment. The cause is submitted on motion to quash the alternative writ.

The petition for the writ alleged plaintiff, a Kansas corporation doing business as a loan and finance company, owned shares of stock of the value of $64,300 of the Davis-Wellcome Missouri Mortgage Company, a Missouri corporation. In 1934 plaintiff delivered to the county assessor its tax return. The return did not particularly specify nor specially list the shares of stock. The county assessor by letter notified plaintiff the return was not acceptable, and the county assessor added to the return the shares of stock, valued at $64,300. The assessor's letter follows:

"Acknowledgment is made of your company's tax rendition for 1934, which is not acceptable as returned by you.

"Our deputy assessor informs me that you admit the ownership of shares of stock in the Davis-Wellcome Mortgage Company of Missouri, in the sum of $64,300. This stock is assessable under the laws of Kansas to your company the same as shares of stock in any foreign corporation owned by any Kansas individual or firm. The amount of $64,300 has therefore been carried to line 36, page 3, of tax commission Form 2a, and has resulted in increasing your company's assessment from $1,820 to $66,130."

All property in this state not expressly exempt is subject to taxation in the manner prescribed by the taxation act. Shares of stock in a foreign corporation held by a resident owner are not expressly exempt, nor specially taxed. The shares are simply personal property taxable to the owner, in common with other personal property, under the general law.

The initial step in the taxation process is, that the property owner gives to the assessor a sworn statement, listing the owner's property at its true value in money. The statute requires that the statement shall truly and distinctly set forth:

"18. Stocks in any company or corporation." (R. S. 79-307.)

The tax commission is authorized to prescribe forms to be used in listing, assessment and return of property for taxation. (R. S. 79-1401.) For use in the year 1934 the tax commission prescribed Form 2a, Revised 1934, an elaborate document consisting of four

pages. Plaintiff used that form in making its return to the county assessor.

The tax commission has power as follows:

"To require individuals, partnerships, companies, associations, joint stock companies and corporations to furnish information concerning their capital, funded or other debts, current assets and liabilities, value of property, earnings, operating and other expenses, taxes and other charges, and all other facts which may be needful or desirable to enable the commission to ascertain the value and relative burdens borne by all kinds of property in the state." (R. S. 79-1404, *Sixth*.)

The form prescribed for the year 1934 called for a general financial statement. The statement embraced gross receipts, gross operating expenses and net result from operation; bonded debt and floating debt, with rates of interest, and interest paid; total disbursements from dividends, net earnings and amount carried to surplus. Plaintiff gave none of this information, and the assessor acquiesced. The financial statement further called for number of shares of stock issued and outstanding, par value, market value and actual value, per share. Plaintiff supplied this information. The number of shares was 1,000, the par value was $100 per share, there were no shares on the market, and the actual value was par value. The form also called for a detailed statement of assets and liabilities. Plaintiff furnished this information by a tabulation of assets and liabilities in the usual manner. Among the bookkeeping liabilities were capital paid up, $100,000; surplus, $314,412; and undivided profits, $3,940—a total of $418,352.

Following the portion which has been described, the form called for listing and valuation of various items of property. So far as material here, this part of plaintiff's return reads:

"Item 1. Real estate owned in Kansas. See schedule.

"Item 2. Real estate owned in other states. None.

"Item 3. Personal property (not including mortgages). None.

"Item 5. Kansas state and municipal bonds owned. None.

"Item 6. Shares of stock owned in other corporations required to be listed for taxation by such corporations. (Check mark.)"

Item 6 of this part of plaintiff's return concluded as follows:

"Actual value in money of all shares of stock on March 1, 1934, as fixed by owner ............................................. $........"

Item 7 of plaintiff's return was the following:

"Actual value in money of all shares of stock on March 1, 1934, as fixed by deputy assessor................................. $........"

All the foregoing matter was on page 1 of plaintiff's return. Pages 2 and 3 called for listing and valuation of specific kinds of personal property. Plaintiff listed automobiles valued at $820, and listed office furniture and equipment valued at $1,000. These valuations were accepted by the assessor.

Lines 34 and 36 on page 3 of plaintiff's return are as follows:

| | "Valuation by owner. | Valuation by assessor. |
|---|---|---|
| "34. All other tangible property not listed on this statement | ........ | ........ |
| "36. Shares of stock in corporations which do not have their principal office in Kansas............ | ........ | ........" |

Page 4 of the statement, as returned by plaintiff, and so far as material, is as follows:

"Assessment of Shares of Stock

| | |
|---|---|
| "1. Number of shares of stock issued and outstanding........ | 1,000 |
| "2. Par value of shares ................................. | $100 |

Recapitulation

| | |
|---|---|
| "3. Actual value in money of all shares of stock as fixed by deputy (Item 7, page 1) ............................ | $........ |
| "4. Assessed value of real estate owned in Kansas (Item 1, page 1) ......................................... | 119,730.00 |
| "7. Assessed value of personal property in Kansas as shown on page 3 ...................................... | ........ |
| "9. Net value moneys and credits listed on Form 2m.......... | 88,260.35 |
| "10. Mortgages on Kansas real estate on which registration fee has been paid ...................................... | 210,005.22 |
| "12. Federal securities owned March 1....................... | 36,240.61 |
| "Total deductions ............................... | $454,236.18" |

Plaintiff did not list the Missouri shares at line 36 on page 3 of the return. The assessor listed the shares at that place, at their true value in money, and plaintiff contends the item should be stricken from its return.

Plaintiff's contention is based on R. S. 79-310, and it is necessary to ascertain the function of that section in the tax law. The section reads:

"That no person shall be required to include in the list of personal property any portion of the capital stock of any company or corporation which is required to be listed by such company or corporation; but all incorporated companies, except such companies and corporations as are specially provided for by statute, shall be required to list by their designated agent in the township or city where the principal office of said company is kept, the full amount

of stock paid in and remaining as capital stock, at its true value in money, and such stock shall be taxed as other personal property: *Provided,* That such amount of stock of such companies as may be invested in real or personal property, which, at the time of listing said capital stock, shall be particularly specified and given to the assessors for taxation, shall be deducted from the amount of said capital stock."

Without the section shareholders would themselves be taxed on their shares at their true value in money. The section relieves shareholders from payment of tax on their shares. The corporation may or may not pay a tax on the shares.

Suppose organization of a corporation is completed and its capital stock of $100,000 is paid in in cash on February 29 of a leap year, but none of it has been invested in real or personal property. The next morning, March 1, the assessor appears. The full amount of capital stock paid in remains as capital stock, and must be listed and valued for purpose of a capital-stock tax. Because there is no real or personal property to be listed and valued as such, a capital-stock tax is all the corporation would pay.

Suppose the corporation was organized February 1, capital stock of $100,000 was paid in, and before March 1, $50,000 had been invested in land. That leaves $50,000 paid in and remaining as capital stock, which must be listed and valued for purpose of a capital-stock tax. The real estate in which half the capital stock was invested must be particularly specified and given to the assessor for taxation. Since the land is taxed in the regular way, the part of the capital invested in land is not also taxed.

Suppose that besides the fifty per cent of the capital paid in and invested in land, twenty-five per cent more of the capital had been invested in personal property. The portion invested in personal property, particularly specified and given to the assessor for taxation, should also be deducted in ascertaining capital-stock tax.

With seventy-five per cent of the capital paid in invested in real and personal property, twenty-five per cent would remain as capital stock, and would be subject to a capital-stock tax, to be paid by the corporation.

Suppose all the capital paid in had been invested in real and personal property. No capital stock would remain as capital stock on which a capital-stock tax might be imposed.

Suppose all the capital stock of $100,000 paid in had been invested in real and personal property of the value of $100,000 and the corporation had borrowed $10,000, which had been invested in real

and personal property of the value of $10,000. There would be no capital-stock tax, but the corporation would be obliged to list for taxation $110,000 worth of real and personal property.

Aside from relieving shareholders of obligation to return for taxation that portion of their property which consists of their shares, R. S. 79-310 has but one purpose. The purpose is to tax, by means of a capital-stock tax, the excess of valuation of capital stock (all shares) over valuation of real and personal property duly listed and valued for purpose of a property tax. In particular, capital stock is not valued with any design of establishing an ultimate or general valuation on which the corporation is to be assessed. Much less was the section designed to exempt a corporation whose investments in real and personal property exceed its capital-stock valuation from listing and valuing any portion of its personal property.

In this instance plaintiff merely stated the par value of its 1,000 shares. The assessor did not extend on the return a valuation of the shares. Hence the return disclosed that a sum greater than the amount of capital stock paid in, with increments of surplus and undivided profits, had been invested in real and personal property. On this basis no portion of the capital stock paid in remained as capital stock, to be valued and returned as such, for taxation, pursuant to R. S. 79-310.

In plaintiff's tabulated statement of assets and liabilities, the second item of assets was the following:

"Stock, bonds and other securities................................ $67,440"

Plaintiff alleged the Missouri shares were included at a valuation of $64,300, in this item of assets, and the fact is admitted by the motion to quash. The fact is of no consequence. The statement of assets and liabilities, like the financial statement preceding it, did not constitute a listing or valuation of anything for purpose of taxation. The statement was informative only. Listing and valuation of property owned by the corporation, for purpose of taxation, commenced with item 1, page 1 of the return: "Real estate owned in Kansas."

Plaintiff did not list the shares of stock of the Missouri corporation. A specific place for listing and valuation by plaintiff was provided in line 36 on page 3 of the return. When plaintiff declined to particularly specify the shares, and give them to the assessor for taxation, the county assessor was authorized to list them at that place at the admitted value of $64,300.

Plaintiff contends that, pursuant to R. S. 79-310 and the decisions of this court, plaintiff could not be compelled to list any particular item of its personal property. The statute has been analyzed. It will not bear any such interpretation, and there is no decision of this court which supports the contention.

Plaintiff cites two cases involving taxation of banks: *Bank v. Geary County*, 102 Kan. 334, 170 Pac. 33, and *Citizens Bank v. State Tax Commission*, 132 Kan. 5, 294 Pac. 940. The decisions explain themselves, and neither one has any application to the present controversy. The decision in the Citizens bank case involved a peculiar fabrication by the legislature at the special session of 1930, which was promptly repealed at the regular session in 1931.

Plaintiff cites other cases in the same general field of taxation as this one. The first is *Gas Co. v. Spaeth*, 83 Kan. 191, 109 Pac. 785. In that case the capital stock of the gas company consisted of 10,000 shares of the par value of $100 each, and the question was what capital stock paid in remained subject to a capital-stock tax. Capital stock was valued at $1,400,000. Real estate returned for taxation was valued at $862,970. Personal property returned for taxation was valued at $41,300. The total valuation of real and personal property was $904,270. Deducting this sum from capital-stock valuation, there remained $495,730. The quarrel was over valuation of capital stock, from which real and personal property valuations were to be deducted to get the portion of capital stock subject to a capital-stock tax. The state board of equalization directed the county clerk to extend taxes on the real-estate valuation, on the personal-property valuation, and on the excess capital-stock valuation. This method of arriving at the gas company's taxable property was approved by this court, and is still approved.

Plaintiff cites the case of *Building Co. v. Saline County*, 98 Kan. 732, 160 Pac. 971, which was of the same nature as *Gas Co. v. Spaeth*. The building company's capital was all invested in a building, and the income of the company was derived from rent of the building. The assessed valuation of the building was $45,500. The capital stock of the company was valued at $60,000, and the difference was subjected to a capital-stock tax. The quarrel was over valuation of the capital stock, when all the taxable property separately returned for taxation, which the corporation owned, was the building. No bad faith in making the capital stock valuation appeared, and this court approved the action of the taxing officers in

subjecting the excess valuation of capital stock to a capital-stock tax. If the property had been personal property instead of real estate, the corporation would have been assessed on its personal property and on the excess valuation of capital stock over valuation of personal property.

Plaintiff cites the case of *Crosby Bros. Merc. Co. v. Shawnee County Comm'rs*, 128 Kan. 740, 280 Pac. 786. The question in the case was, How much capital-stock tax should the corporation pay? The corporation had made return of capital, surplus and undivided profits amounting to $516,517.57. It had also returned for taxation real estate and specific items of personal property amounting to $462,125. There remained a balance of uninvested capital stock, at the valuations stated, of $54,392.57. The return also showed the corporation had invested the sum of $53,755 in shares of stock, taxation of which was governed by R. S. 79-310. Plaintiff properly deducted this sum from the balance of uninvested capital, to get the amount of its own capital stock remaining as capital stock, on which a capital-stock tax was to be computed. In the opinion occurs the following, quoted by plaintiff:

"The result of the foregoing is listed capital stock, with increments of surplus and undivided profits, represents the *corpus* of the corporation's avails, real and personal. Shares of capital stock are merely divisions of capital stock. The value of capital stock is the total value of all the divisions and, except in cases specially provided for by statute and not material here, shares are not taxed to shareholders." (p. 742.)

This was and still is true. The next paragraph of the opinion shows the court was talking about basis for a capital-stock tax:

"If, at the time of listing capital stock for taxation, the corporation discloses investments in real and personal property which it returns for taxation according to the general method of taxing real and personal property, such investments may be deducted from capital stock and the remainder, if any, is taxed as capital stock." (p. 742.)

In the Crosby Bros. case valuations were not in dispute.

Plaintiff cites the case of *Hodgins v. Shawnee County Comm'rs*, 123 Kan. 246, 255 Pac. 46. The sole question was whether a cold storage, ice and fuel corporation was obliged to pay taxes on United States liberty bonds. Of course, it was held the bonds were exempt from state taxation. Plaintiff quotes the following from the opinion:

"Manifestly the statute treats the corporation as a legal entity and as the owner of the corporate property. It is required to list the property which it owns for taxation at its true value in money. The plan devised by the legislature for the taxation of corporate property is to assess the capital stock of

the corporation, and its value is determined by the value of its assets, less its liabilities and also less certain property which is required to be assessed by a different method under other statutory provisions." (p. 248.)

The first two sentences of this paragraph stated the law applicable to the case, and applicable to this case. The opinion then passed over to the method of taxing banks, cited the case of *Bank v. Geary County*, 102 Kan. 334, 170 Pac. 33, and quoted from the opinion in that case. The first paragraph of the syllabus in the Geary county case reads:

"The tax contemplated by section 11236 of the General Statutes of 1915, relating to taxation of national banks, state banks, and loan or investment companies, is a tax on shares of stock in the hands of stockholders, and not a tax on capital stock or assets, the property of the corporation." (Syl. ¶ 1.)

The reason for this special method of taxation was stated at length in the opinion. Loan and investment companies are no longer classified with banks for purpose of taxation.

Plaintiff cites the case of *Davis-Wellcome Mortgage Co. v. Haynes*, 119 Kan. 1, 237 Pac. 918. The case was decided as soon as possible after the mortgage registration and moneys and credits acts were passed in 1925. The purpose of the action was to determine whether plaintiff and another corporation were entitled to benefit of those acts in making tax returns. The decision determined those questions. The question whether a corporation may omit all its personal property from its tax return was not involved and was not decided. In the syllabus and in the opinion general statements were made to the effect Kansas corporations having capital stock are required to pay taxes on behalf of their stockholders, based on the value of all outstanding shares, with such deduction as the statute allows. The qualifying words of R. S. 79-310, "paid in and remaining as capital stock," were not considered, and the proviso of the section was not considered. The apparent assumption that corporations are taxed on valuation of capital stock, as including all corporate avails, did not vitiate the decision, but it did not establish a method for assessing corporations having capital stock which would permit them, at their option, to suppress from their returns their personal property. In this case plaintiff did return items of personal property valued at $1,820.

The effect of what is now the language of R. S. 79-310 was bluntly stated in the opinion in the case of *Hunt v. Allen County*, 82 Kan. 824, 109 Pac. 106:

"It is true that under the provisions of this section the capital stock of a corporation having its principal office in this state practically escapes taxation to the extent that the same is invested in real estate or in personal property." (p. 827.)

The reason is, shareholders do not pay at all, and the corporation pays only on the portion which is not invested in real or personal property, and which, therefore, remains as capital stock.

Plaintiff contends it cannot be taxed beyond capital, surplus and undivided profits, which represent all the avails and earning power of the corporation. If, by capital, surplus and undivided profits, plaintiff means the figures opposite those headings in its account books, the statement is not correct. If the meaning be, that real estate be valued at its true value in money, that personal property be valued at its true value in money, that all other factors of earning power be valued at their true value in money, and that these valuations be added together, to get a true valuation in money of capital, with its increments of surplus and undivided profits, the statement is correct. The course of tax procedure is according to the method last indicated, and cannot result in taxing a corporation beyond capital, surplus and undivided profits as representing all the avails and earning power of the corporation.

In this instance, the assessor did not assign any valuation to corporate stock at the places indicated on the return. The figures could be of no use, except to determine whether plaintiff should pay a capital-stock tax. On the face of the return, accepted except with respect to the Missouri shares, no portion of plaintiff's "stock paid in" remained as "capital stock," and there was nothing against which a capital-stock tax could be extended.

The result of the foregoing is that a corporation such as plaintiff must include in its assessment return: (a) A list of its real estate, valued at its true value in money; (b) a list of its personal property similarly valued, moneys and credits being shown on a separate form, and real-estate mortgages on which the registration fee has been paid not being further taxed; (c) that portion of its capital stock paid in which has not been invested in real and personal property returned for taxation. In arriving at (c), capital stock, including surplus and undivided profits, is valued at its true value in money, for the purpose of ascertaining whether something remains to be taxed besides (a) and (b).

The motion to quash the alternative writ is allowed, and a peremptory writ is denied.